JOHN ALDEN LIFE INSURANCE COMPANY, Plaintiff v. NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, Defendant

No. COA03-229

(Filed 6 January 2004)

**Workers' Compensation— payment of medical expenses—equitable subrogation**

Plaintiff health insurer's claim against the Insurance Guaranty Association (IGA) on behalf of an insolvent workers' compensation carrier for payment of an insured's medical expenses after a work-related heart attack constituted a claim for equitable subrogation for which the IGA was liable where plaintiff paid the medical expenses in good faith without knowledge that the heart attack was a compensable workers' compensation injury, and the health insurance policy excluded from coverage compensable workers' compensation injuries.

Appeal by Plaintiff from judgment entered 22 November 2002 by Judge Stafford G. Bullock in Superior Court, Wake County. Heard in the Court of Appeals 18 November 2003.

JOHN ALDEN LIFE INS. CO. v. N.C. INS. GUAR. ASS'N

[162 N.C. App. 167 (2004)]

*Allen Mills of Frederic E. Toms & Associates, P.L.L.C., for the Plaintiff.*

*Christopher J. Blake and Betsy Cooke of Moore & Van Allen, P.L.L.C., for the Defendant.*

WYNN, Judge.

By this appeal, John Alden Life Insurance Company ("John Alden Insurance") seeks reversal of the trial court's summary judgment order dismissing all of its claims against North Carolina Insurance Guaranty Association ("Guaranty Association"). After careful review, we reverse and remand.

The facts giving rise to this case are not disputed. On 28 July 1997, David Nugent suffered a severe heart attack during the course of his employment at Republic Industries. To cover the cost of his extensive medical treatment, which included a heart transplant, Mr. Nugent submitted claims to his health insurance carrier, John Alden Insurance, and his employer's worker's compensation insurance carrier, Credit General Insurance Company ("Credit General"). Although the policy issued by John Alden Insurance specifically excluded from coverage compensable workers' compensation injuries, John Alden Insurance began paying for Mr. Nugent's medical care because it was unaware that Mr. Nugent's injury was work-related.

In the meantime, Credit General denied worker's compensation insurance coverage for Mr. Nugent's injuries. Mr. Nugent appealed to the North Carolina Industrial Commission and while the matter was pending, Credit General was declared insolvent. As a result, Guaranty Association became a party to Mr. Nugent's worker's compensation action. *See* N.C. Gen. Stat. § 58-48-5 (stating that the Guaranty Association was created to ensure North Carolina citizens "avoid financial loss . . . [as] policy holders because of the insolvency. of an insurer.").

On 18 September 2001, the Industrial Commission issued an Order and Award, requiring that Guaranty Association "pay for all medical treatment as a result of the plaintiff's heart attack." Guaranty Association did not appeal from that decision; accordingly, it began paying for Mr. Nugent's medical care expenses. However, Guaranty Association refused to reimburse John Alden Insurance for the $722,335.62 expended on Mr. Nugent's care prior to the Industrial Commission's Order. In response, John Alden Insurance brought

the subject action against Guaranty Association to recover payments made for Mr. Nugent's medical care.

From the trial court's grant of summary judgment in favor of Guaranty Association, John Alden Insurance argues on appeal that the trial court erred because its claim for reimbursement arises from an entitlement for equitable subrogation. We agree.

Under N.C. Gen. Stat. § 58-48-35, the Guaranty Association "shall be obligated to the extent of the covered claims existing prior to the determination of insolvency." The statute defines covered claims as follows:

> 'Covered claim' means an unpaid claim . . . which . . . arises out of and is within the policy . . . as issued by an insurer, if such insurer becomes an insolvent insurer . . . 'Covered claim' shall not include any amount . . . due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation or contribution recoveries or otherwise.

N.C. Gen. Stat. § 58-48-20. Thus, under the plain language of the statute, Guaranty Association is not obligated to pay subrogation claims.

However, this Court has distinguished conventional subrogation claims from equitable subrogation claims:

> An insurer asserting a [conventional] <u>subrogation</u> claim rightfully paid damages for its insured, in the first instance, under its policy, but contends that another <u>party</u> is primarily liable for the damages. By contrast, an insurer asserting an <u>equitable subrogation</u> claim did not owe the claim, in the first instance; it was owed by another <u>insurer</u> who wrongfully refused to pay the claim.

*North Carolina Ins. Guar. Ass'n v. Century Indem. Co.*, 115 N.C. App. 175, 190, 444 S.E.2d 464, 473 (1994) (citations omitted) (emphasis in original), *cert. denied*, 337 N.C. 696, 448 S.E.2d 532 (1994). In *Century*, this Court held Guaranty Association liable for Plaintiff's equitable subrogation claim and explained:

> This Court has stated that while conventional subrogation "arises from an express agreement of the parties," equitable subrogation "rests not on contract but on principles equity." Furthermore, this Court has held that equitable subrogation is a "remedy [which] is <u>highly favored and liberally applied</u>." We conclude that our

General Assembly did not intend for the term "subrogation" to encompass equitable subrogation . . . .

*Id.* (Internal Citations omitted, emphasis in original.)

In this case, John Alden Insurance paid for Mr. Nugent's medical expenses in good faith, lacking knowledge that Mr. Nugent's heart attack was a compensable workers' compensation injury. Not until the Industrial Commission issued its Opinion and Award on 18 September 2001 did John Alden Insurance know Mr. Nugent's claim arose out of and as a result of his work at Republic Industries, and was thus specifically excluded from coverage under the explicit language of the policy's "Charges Not Covered" provision, which states:

For treatment of any Injury or Illness that arises out of, or as the result of; any work for wage or profit, paid or payable under the Workers' Compensation Act; except that, this exclusion will not apply to:

a. the sole proprietor, if the Employer is a proprietorship;

b. a partner of the Employer, if the Employer is a partnership;

c. an executive officer of the Employer, if the Employer is a corporation;

for any treatment that results from Injury or Illness that arises out of or as a result of any work for the Employer and then only if he or she is <u>not required</u> to have coverage under any Workers Compensation Act or similar law and does not have such coverage.

[Appendix A, Health Insurance Policy, Rider p. 7, Policy p. 19]

Notwithstanding this exclusion under John Alden Insurance's policy, Guaranty Association asserts that "[d]uring those three and a half years that the worker's compensation claim was either not filed or denied, John Alden remained contractually and primarily obligated to pay the medical expenses of Mr. Nugent." We disagree. To the contrary, as in *Century*, John Alden Insurance presented an equitable subrogation claim based upon payments made for injuries that arose from an uncovered event—a work-related injury payable under the Workers Compensation Act. Since Mr. Nugent suffered from an injury compensable under the Workers Compensation Act, under the policy provided by John Alden Insurance, he was not entitled to coverage.

Accordingly, the trial court erred in granting Guaranty Association's motion for summary judgment. Indeed, under the facts of this case, we remand this matter to the trial court for entry of summary judgment in favor of John Alden Insurance.

Reversed and remanded.

Judges TIMMONS-GOODSON and McCULLOUGH concur.